# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

VICTOR SWANSON,

     Plaintiff,

v.                                 Case No. 14-12581

UAW INTERNATIONAL UNION,

     Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Victor Swanson filed a complaint against his labor union, Defendant UAW International Union, alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964 and discriminatory treatment and harassment in violation of the Michigan Elliott-Larsen Civil Rights Act, Mich Comp. Laws § 37.2201, *et seq.*  (Dkt. # 1-1.)  Now before the court is Defendant's Motion for Summary Judgment.  (Dkt. # 13.)  The court held a hearing on the motion on August 17, 2015.  For the reasons stated on the record and below, Defendant's Motion for Summary Judgment will be granted as to Plaintiff's Michigan Elliott-Larsen Civil Rights Act claim and denied as to Plaintiff's Title VII claim.

## I. BACKGROUND

Plaintiff, who identifies as African American, began working as a table game dealer for MGM Grand Casino ("MGM") in August 2007.  (Dkt. # 13-2, Pg. ID 133.)  Throughout his employment with MGM, Plaintiff was a member of Defendant, an international workers' union, and its local affiliate, UAW Local 7777.  (*Id.*; Dkt. # 17-3,

Pg. ID 411.)  Due to injuries sustained in March 2012, Plaintiff was granted medical

leave under the Family Medical Leave Act ("FMLA") from March 28, 2012 until June 21,

2012.  MGM extended Plaintiff's medical leave until July 31, 2012. (Dkt. # 13-4, Pg. ID

306-07.)  Plaintiff did not return to work in August 2012. (Dkt. # 13-4, Pg. ID 307.)  On

August 3, 2012, MGM Benefits Manager Anita Sanders informed Plaintiff that he would

need to obtain a "doctor's certificate" within "a couple of weeks" to extend his FMLA

leave.  (*Id.* at 307-08.)  On August 15, 2012, Plaintiff's treating physician's office

attempted to fax a letter to MGM which stated that Plaintiff was not able to "work at all

from 7/31/12 to 10/01/12" and that he would be "[u]nable to return to work until further

evaluation."  (Dkt. # 17-4, Pg. ID 413.)  However, the office sent the letter to the wrong

fax number, and it was not received by Sanders within two weeks of August 3, 2012.

(Dkt. # 13-4, Pg. ID 309; Dkt. # 17-6, Pg. ID 417.)  MGM subsequently terminated

Plaintiff's employment on September 6, 2012.  (Dkt. # 17-5, Pg. ID 415.)

Defendant is a member of the Detroit Casino Counsel ("DCC"), a consortium of

unions which have negotiated collective bargaining agreements with certain casinos in

Detroit, including MGM.  (Dkt. # 13, Pg. ID 106; Dkt. # 13-3, Pg. ID 148.)  The collective

bargaining agreement ("CBA") between DCC and MGM sets forth a three-step

grievance procedure after which, if the grievance is not resolved, the parties engage in

final and binding arbitration.  (Dkt. # 13-3, Pg. ID 149; Dkt. # 13-3, Pg. 48-49.[1])  The

CBA provides that, if a grievance is not resolved at Step 3 of the grievance process,

"either party may submit a discipline and/or discharge matter to Expedited Arbitration."

---

[1]Certain pages on the record do not contain a Page Identification number.  These
pages will be cited to their document page number.

2

(Dkt. # 17, Pg. ID 395.)  According to Brian Johnson, a representative of Defendant, if a grievance is unresolved after Step 3, before proceeding to final and binding arbitration, it is Local 7777's practice to refer the matter to the UAW Region 1 office for further processing.  He explained:

> Once a grievance is referred to Region 1, the Internal servicing representative assigned to assist Local 7777 has authority to decide how best to proceed, including settling the grievance, withdrawing the grievance, or advancing to the next step in the process.  If the Region 1 servicing representative decides to advance the grievance, he/she traditionally schedules another meeting with the employer to discuss the merits of the grievance.  The parties refer to this as a step 3.5 meeting.  The CBA does not require the parties to conduct a step 3.5 meeting, however, the parties have mutually agreed to this step in the grievance process.  If the parties are unable to resolve the grievance at the 3.5 step, the Region 1 servicing representative has the choice of mediating the grievance, with the employer's consent, or ultimately appealing the grievance to the fourth and final step of the grievance procedure, which is arbitration.

(Dkt. # 13-3, Pg. ID 149.)

With the assistance of Local 7777 representative Dewight Braxton, Plaintiff filed a grievance against MGM alleging that he was terminated in violation of the CBA.  (Dkt. # 13-3, Pg. ID 269.)  The grievance was unresolved following the initial three steps of the grievance procedure after which it was referred to Johnson, who was serving as Defendant's representative at the Region 1 office.  (Dkt. # 17-9, Pg. ID 426.)  Johnson had a "Step 3.5" meeting with Defendant's human resources director on January 4, 2013. (Dkt. # 13-3, Pg. ID 150.)  The parties were unable to resolve the grievance at the meeting.  (*Id.*)  McIntosh sent a letter to Johnson denying Plaintiff's grievance on January 17, 2013. (Dkt. # 17-12, Pg. ID 440.)  Johnson responded to McIntosh on January 25, 2013 informing her that Defendant would seek mediation or arbitration on Plaintiff's behalf. (Dkt. # 13-3, Pg. ID 270.)

3

On February 6, 2013, Plaintiff's treating physician informed Plaintiff that he was able to return to work.  (Dkt. # 17-2, Pg. ID 407.)  Meanwhile, in early February, Johnson attempted to reach an agreement with McIntosh regarding mediating a number of grievances, including Plaintiff's grievance.  (Dkt. # 13-3, Pg. ID 15-51.)   On February 15, 2003, McIntosh sent Johnson a letter advising him that MGM would not mediate Plaintiff's grievance.  (Dkt. # 17-13, Pg. ID 442.)  Three days later, Johnson sent a letter to McIntosh informing her that Defendant would pursue arbitration on behalf of Plaintiff pursuant to Article 23.02.  (Dkt. # 17-4, Pg. ID 444.)

Johnson then referred Plaintiff's grievance to Keith Neargardner in Defendant's Gaming Department.  (Dkt. # 13-3, Pg. ID 151.)  Plaintiff alleges that, in March 2013, Johnson told Tanganeka Phillips, who is employed as a banker at MGM and a Chairperson with Local 7777, "that he was withdrawing Plaintiff's arbitration, and that he was pursuing arbitration for a Caucasian member, Jeffery Wiesner who was terminated only two months earlier on January 4, 2012."  (Dkt. # 17, 389.)  During Phillips' deposition, she testified that Johnson and Neargardner told her that they were going to withdraw certain grievances from arbitration, including Plaintiff's grievance. (Dkt. # 17-15, Pg. ID 448.)  When asked about the other grievances being withdrawn by Johnson and Neargardner, Phillips testified, "There were quite a few [grievances], they were all minorities . . . .  I can't remember all of the names, it was about four or five of them." (*Id.* at 449.)  Plaintiff alleges that Johnson was pursuing "meritless grievances on behalf of Caucasian grievants" at the same time that he was withdrawing the grievances of minority grievants.  (Dkt. # 17, Pg. ID 391.)  In particular, Phillips stated in an affidavit that "Mr. Weisner's grievance had no merit" while four minority grievants, including

4

Plaintiff, "had been off work much longer than Mr. Weisner had and their cases had merit." (Dkt. # 17-16, Pg. ID 452.) Phillips told Johnson that she would file a complaint with the Equal Employment Opportunity Commission ("EEOC") for pursuing Weisner's case instead of the cases of minority grievants. (Dkt. # 17-16, Pg. ID 452.)

Additionally, according to Phillips, in a May 2013 meeting, Johnson inquired into the race of several grievants and "separated the grievances into two piles, one for minorities and one for non-minorities," and, "[a]t the end of the meeting[,] Mr. Johnson withdrew all the grievances of the minorities based upon race." (Dkt. # 17-16, Pg. ID 452.) Phillips stated in her affidavit that Johnson told her "that the problem with the Union was that there were too many blacks in the union" and that she has observed Johnson "treat blacks and other minorities in a disrespectful discriminatory manner while being very pleasant and king [sic] to white members of the union." (*Id.*)

Ultimately, Plaintiff's grievance was not withdrawn. Plaintiff and Phillips suggest that Johnson opted not to withdraw Plaintiff's grievance as a result of Phillips' threat to file a complaint with the EEOC. (Dkt. # 17, Pg. ID 392; Dkt. # 17-16, Pg. ID 452.) On July 23, 2013, Neargardner presented Plaintiff's grievance at an arbitration hearing. (Dkt. # 13-4, Pg. ID 279-80.) On September 26, 2013, the Arbitrator found in Plaintiff's favor and reinstated his employment, but did not award him back pay. (Dkt. # 13-4, Pg. ID 328.) Plaintiff returned to work on November 28, 2013. (Dkt. # 17-2, Pg. ID 408.)

Defendant notes that Neargardner arbitrated three other grievances in 2013, all of which involved "a member of a protected class." (Dkt. # 13, Pg. ID 112-13.) These other arbitrations occurred between approximately 7 months to 11 months after the

5

grievants were discharged.  (*Id.* at 113.)  Defendant also notes that none of Weisner's

grievances were arbitrated prior to Plaintiff's arbitration.  (*Id.*)

Plaintiff again went on medical leave on January 21, 2014. (Dkt. # 17-17, Pg. ID

458.)  On May 30, 2014, MGM terminated Plaintiff's employment "[d]ue to [his] leave

exceeding the leave absence maximum" of one year.  (*Id.*)  In calculating Plaintiff's

medical leave of absence, MGM included the period from March 28, 2012 to November

28, 2013 and January 21, 2014 to May 30, 2014.  (*Id.*)

## II. STANDARD

Summary judgment is proper "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  "In deciding a motion for summary judgment, the court

must view the evidence in the light most favorable to the non-moving party, drawing all

reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497

(6th Cir. 2003).  The movant has the initial burden of showing the absence of a genuine

dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"[T]hat burden may be discharged by showing . . . that there is an absence of evidence

to support the nonmoving party's case." *Bennett v. City of Eastpointe*, 410 F.3d 810,

817 (6th Cir. 2005) (internal quotation marks omitted).

The burden then shifts to the nonmovant, who must put forth enough evidence to

show that there exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909

(6th Cir. 2004) (citation omitted). Summary judgment is not appropriate when "the

evidence presents a sufficient disagreement to require submission to a jury." *Anderson

v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  In evaluating a summary judgment

6

motion, "the judge's function is not himself to weigh the evidence and determine the

truth of the matter but to determine whether there is a genuine issue for trial . . . .

credibility judgments and weighing of the evidence are prohibited."  *Moran v. Al Basit*

*LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (internal quotation marks and citations omitted).

### III. DISCUSSION

Plaintiff alleges that Defendant discriminated against him based on his race in

violation of Title VII of the Civil Rights Act of 1964 and the Michigan Elliott-Larsen Civil

Rights Act, Mich Comp. Laws § 37.2201, *et seq.*  (Dkt. # 1-1.)  In particular, he alleges

that, because of his race, Defendant "fail[ed] to adequately and timely represent Plaintiff

[with respect to his grievance against MGM, which] ultimately cost Plaintiff his

employment with MGM . . . after Plaintiff exhausted medical leave time." (Dkt. # 17, Pg.

ID 387.)

During the August 17, 2015 hearing, Plaintiff conceded that his Michigan Elliott-

Larsen Civil Rights Act claim is preempted by federal law.  Defendant's motion for

summary judgment, therefore, will be granted as to Plaintiff's Michigan Elliot-Larsen

Civil Rights Act claim.  The only remaining issue before the court is whether Plaintiff's

Title VII claim survives Defendant's summary judgment motion.

Title VII makes it unlawful for labor organizations to "discriminate against[] any

individual because of his race, color, religion, sex, or national origin."  42 U.S.C.

§ 2000e-2(c).  Discrimination claims brought pursuant to Title VII are typically evaluated

using a burden-shifting framework developed by the Supreme Court in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dept. of Comm. Affairs v.*

7

*Burdine*, 450 U.S. 248 (1981).[2]  Where a Title VII claim against a labor union is based

on discrimination in failing to fairly represent an employee in a dispute with an employer,

the Sixth Circuit has suggested that courts evaluate whether the union breached its duty

of fair representation on the basis of discrimination.

A union certified as the exclusive collective bargaining representative for a group

of employees owes those employees a statutory duty of fair representation.  *See Vaca*

*v. Sipes*, 386 U.S. 171, 177 (1967).  "Under th[e] doctrine [establishing the statutory

duty of fair representation], the exclusive agent's statutory authority to represent all

members of a designated unit includes a statutory obligation to serve the interests of all

members without hostility or discrimination toward any, to exercise its discretion with

complete good faith and honesty, and to avoid arbitrary conduct."  *Vaca v. Sipes*, 386

U.S. 171, 177 (1967).  The Sixth Circuit has held that "it is almost axiomatic that a

union's breach of the duty of fair representation also subjects it to liability under Title VII

if the breach can be shown to be because of the complainant's race, color, religion, sex,

---

[2]"Under this framework, the plaintiff bears the initial 'not onerous' burden of establishing a prima facie case of discrimination by a preponderance of the evidence. To establish a prima facie case of employment discrimination, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees."  *White*, 533 F.3d at 391 (internal quotation marks and citations omitted).  If a prima facie case has been established, "the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action."  *Id.* (citation omitted).  Last, "if the defendant succeeds in this task, the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination."  *Id.* at 391-92 (citation omitted).  While the burden of production shifts throughout the *McDonnell Douglas/Burdine* framework, the burden of persuasion always remains with the plaintiff."  *Id.* (citation omitted).

or national origin." *Farmer v. ARA Servs., Inc.*, 660 F.2d 1096, 1104 (6th Cir. 1981). Likewise, in an unpublished opinion, the Sixth Circuit held that "a claim that a duty of fair representation was breached on account of discrimination and a claim of discrimination in failing to fairly represent the employee and *essentially the same*" and implied that Title VII plaintiffs may be *required* to prove that a union breached its duty of fair representation to establish a claim under Title VII. *Wells v. Chrysler Group LLC,* 559 F. App'x 512, 514 (6th Cir. 2014) (emphasis added). Thus, based on *Farmer* and *Wells*, it appears that a plaintiff must establish a breach of the duty of fair representation to establish a Title VII claim against a labor union based on discrimination in that union's representation of the plaintiff, and establishing such a brief is sufficient to subject the union to liability under Title VII.

Consistent with the view that Title VII claims against unions are "essentially the same" as claims for breach of the duty of fair representation, *Wells*, 559 F. App'x at 514, district courts in the Sixth Circuit tend to follow the Seventh Circuit's test set forth in *Bugg v. Int'l Union of Allied Indu. Workers of Am., Local 507*, 674 F.2d 595, 598 n.5 (7th Cir. 1982) for evaluating Title VII discrimination claims against labor unions. *See Pruitt v. AFSCME Council 25*, No. 14-12696, 2014 WL 7184479, at *9 (E.D. Mich. Dec. 16, 2014). Under this approach, "the plaintiff [i]s required to show: (1) that the [employer] committed a violation of the collective bargaining agreement with respect to the plaintiff; (2) that the Union permitted that breach to go unrepaired, thus breaching its own duty of fair representation; and (3) that there was some indication that the Union's actions were motivated by racial animus." *Id.* In addition, to recover for a breach of the duty of fair representation, the plaintiff must demonstrate injury. *Bowerman v. Int'l Union, United*

9

*Auto., Aerospace & Agric. Implement Workers of Am., Local No. 12*, 646 F.3d 360, 368 (6th Cir. 2011). Based on the court's reading of *Farmer*, *Wells*, and *Pruitt*, the court will apply the *Buggs* test in evaluating Plaintiff's claims.

Defendant does not contest that MGM violated the CBA but argues that "Plaintiff cannot prove the second or third elements" of the *Buggs* test. (Dkt. # 13, Pg. ID 116-17.) Regarding the second prong of the *Buggs* test, "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190. "A union's actions are improperly discriminatory if they are intentional, severe, and unrelated to legitimate union objectives, and they are in bad faith if made with improper intent or motive." *Bowerman*, 646 F.3d at 368 (internal quotation marks and citations omitted). Plaintiff insists that Defendant discriminated against him, in breach of the duty of fair representation and in violation of Title VII, by "ma[king] the decision to delay and waste time in pursuing Plaintiff's grievance" on the basis of Plaintiff's race, which ultimately cost him his job." (Dkt. # 17, Pg. ID 399.) According to Plaintiff, "[i]f Defendant had not discriminated against Plaintiff due to his race and timely pursued his grievance, the process would have concluded well before Plaintiff was cleared to work on February 6, 2013. Instead, Defendant breached its duty of fair representation by delaying resolution of Plaintiff's grievance because of Plaintiff's race, which kept Plaintiff out of work from February 6, 2013 until November 28, 2013. (Dkt. # 17, Pg. ID 396.)

Defendant laments that Plaintiff's "*only* support for his claim that [Defendant] somehow mishandled his grievance is that Local 7777 Chairperson Phillips told him on some unspecified dates that [Defendant] had set aside his grievance to handle

10

grievances brought on behalf of unidentified white employees" and Phillips' testimony that Defendant delayed pursuing Plaintiff's arbitration in favor of pursuing grievances filed by non-minority union members.  (Dkt. # 13, Pg. ID 118.)  Phillips testified that Johnson used race as a dispositive factor in deciding which grievances to pursue and which to withdraw.  (Dkt. # 17-16, Pg. ID 452.)  Her testimony, summarized more fully above, is sufficient to create a triable issue of fact as to both the second and third prong of the *Bugg* test.  Reading her testimony in the best light of Plaintiff, a reasonable juror could find that Defendant breached its duty of fair representation by delaying Plaintiff's arbitration because of his race and that this decision was based on racial animus.

Defendant's emphasis that Plaintiff's *only* evidence is Phillips' testimony is misguided.  The testimony of one witness is sufficient to defeat a summary judgment motion.  The Sixth Circuit recently held that one witness's testimony *alone*—even where the only testimony is that of the plaintiff himself—can be sufficient to defeat a summary judgment motion.  *Moran*, 788 F.3d at 205.  Where a single affidavit, deposition, or other form of testimony or evidence creates "a genuine issue of material fact," such as here, summary judgment is inappropriate. *Id.* at 205-06.

Next, Defendant argues that the court should discount Phillips' testimony because her "testimony about [Defendant's] conduct is directly contradicted by what [Defendant] undisputedly did with [Plaintiff's] case and [] other grievances."  (Dkt. # 13, Pg. ID 118.)  Namely, Defendant explains that Phillips' testimony is erroneous because Defendant did not withdraw Plaintiff's grievance, all of the grievances arbitrated by Defendant in 2013 were on behalf of minorities, and Weisner's arbitration did not occur until six months after Plaintiff's arbitration.  But Phillips also testified that "Johnson had

11

succumbed to [her] threats of going to the EEOC and was pursuing the arbitration on [Plaintiff's] behalf." (Dkt. # 17-16, Pg. ID 452.)  Her testimony, therefore, accounts for the fact that Defendant ultimately pursued Plaintiff's arbitration.  Phillips' testimony is not necessarily inconsistent with other undisputed facts on the record, and, to the extent that there are any conflicts between the evidence presented by Plaintiff and Defendant, "all reasonable inferences must be made in favor of the non-moving party."  *Moran*, 788 F.3d at 206.  Defendant's focus on Phillips' credibility (Dkt. # 18, Pg. ID 460) is inappropriate, as "credibility judgments and weighing of the evidence are prohibited" when considering a motion for summary judgment.  *Id.* at 204 (citation omitted).[3]

Last, Plaintiff has presented sufficient evidence to demonstrate injury as well. Plaintiff was not awarded back pay as part of his arbitration award. (Dkt. # 13-4, Pg. ID 328.)  Accordingly, at a minimum, any delay in Plaintiff's return to employment caused by Defendant's discriminatory conduct would have resulted in continued lost wages that Plaintiff otherwise would have received by returning to employment sooner.

In sum, Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether Defendant violated Title VII.  Defendant does not contest that MGM violated the CBA; Phillips' testimony raises a genuine issue of fact as to whether Defendant delayed the resolution of Plaintiff's grievance because of his race and whether such delay was motivated by racial animus; and, viewing the record in the

_____

[3]Defendant also argue that "'the mere delay in processing a grievance, without more,' does not establish a breach of the duty of fair representation."  (Dkt. # 13, Pg. ID 119 (quoting *Gorshak v. Ex-Cell-O Corp.*, No. 39209, 1973 WL 187, at *5 (E.D. Mich. May 11, 1973).  This argument is inapposite because this case involves more than mere delay in processing—it involves an alleged delay in processing which was motivated by racial animus.

best light for Plaintiff, the delay injured Plaintiff by, at a minimum, resulting in lost wages.

## IV. CONCLUSION

For the reasons stated on the record and above,

IT IS ORDERED that Defendant's Motion for Summary Judgment (Dkt. # 13) is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED in that Defendant is entitled to summary judgment on Plaintiff's claim based on the Michigan Elliott-Larsen Civil Rights Act, Mich Comp. Laws § 37.2201, *et seq.*  The motion is DENIED as to Plaintiff's claim based on Title VII of the Civil Rights Act of 1964.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  September 3, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 3, 2015, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\DMI\Civil\14-12581.SWANSON.SummaryJudgment.v2.dmi.alt.wpd